# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ERIC D. STREETER　　　　　　　　　　　*

v.　　　　　　　　　　　　　　　　　　*　　　　Civil Action No. CCB-16-3460

WALDEN UNIVERSITY, LLC, *et al.*　　　*

　　　　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　***

## Memorandum

The plaintiff, Eric D. Streeter, has sued the defendants, Walden University and Laureate Education, claiming that their unjustified delay of his doctoral program, among other things, gives rise to six legal claims: breach of contract; unjust enrichment; violation of the Maryland Consumer Protection Act; violation of the Due Process Clause of the Fourteenth Amendment; libel under Florida law; and violation of the False Claims Act. The defendants filed a motion to dismiss, that, for the reasons found below, will be granted.

## Background

Streeter enrolled in Walden University's Doctorate in Business Administration program in the summer of 2010. (Compl. ¶¶ 50-51).[1] Between the summer of 2012 and the fall of 2014, Streeter was enrolled in a dissertation course meant to guide students through the dissertation writing process. (*Id.* at ¶ 58). The dissertation process has five stages: (1) develop and write a premise; (2) develop a prospectus; (3) write a proposal; (4) study or research the subject of the dissertation; and (5) defend the dissertation. (*Id.* at ¶ 22). At each stage, a student needs faculty approval before proceeding to the next step. (*Id.* at ¶ 23). For example, a student's prospectus

---

[1] Streeter's complaint is substantially copied from the complaint filed in *Travis, et al. v. Walden University, et al.*, 2015 WL 6769101 (D. Md. Oct. 30, 2015).

1

must be approved "by both the dissertation supervisory committee chair and the committee member" before the student may write a proposal. (*Id.* at ¶ 27).

In February 2012, Streeter submitted his prospectus to the supervisory committee for approval. (*Id.* at ¶ 59). It was approved and his supervisory committee was created. (*Id.*). Over the next two years, however, the composition of Streeter's supervisory committee changed twice: first, Dr. Lionel deSouza replaced a committee member; then, after Streeter requested a new committee chair, the University appointed Dr. deSouza to the position of chair despite Streeter suggesting one of three other faculty members for the position. (*Id.* at ¶¶ 60-61). Soon after, Streeter learned that Dr. deSouza did not support aspects of his proposed doctoral study. (*Id.* at ¶ 62). He was asked to start over. (*Id.*).

In response, Streeter petitioned the university for reimbursement of the money he spent developing his original doctoral study. (*Id.* at ¶ 63). After his petition was denied, Streeter requested a teleconference with the university's ombudsman, the director of his program, and anyone else the university thought necessary to the resolution of his grievances. (*Id.* at ¶ 64). Streeter was again rebuffed. (*Id.*). Streeter now sues Walden and Laureate claiming they unlawfully expanded the length and cost of his doctoral program. (ECF No. 1).[2] Walden and Laureate responded with a motion to dismiss the complaint. (ECF No. 19). For the following reasons, the court will grant the motion.

**Standard of Review**

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast'

---

[2] Streeter has also filed a motion for leave to file a surreply. The court will grant the motion.

evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). And the plaintiff typically must do so by relying solely on facts asserted within the four corners of his complaint. *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015).

**Analysis**

Streeter claims that Walden and Laureate,[3] by extending the length of his doctoral program: breached their contractual obligations; were unjustly enriched; violated the Maryland Consumer Protection Act, MD. CODE COM. LAW, § 13-301 *et seq*.; violated the due process clause of the Fourteenth Amendment; committed libel under Florida law; and violated the False Claims Act, 31 U.S.C. § 3729.

I. Breach of Contract

Streeter argues Walden and Laureate breached their contractual obligation to provide him feedback on his dissertation proposal within fourteen days.

Under Maryland law, matriculation creates a contractual relationship between student and university with terms which may be "contained in the brochures, course offering bulletins, and other official statements, policies and publications of a university." *Harwood v. Johns Hopkins University*, 747 A.2d 205, 209 (Md. App. 2000) (internal quotations omitted). Although courts will enforce these contracts under certain circumstances, especially when a student has completed all of her degree requirements and denial of a degree would be "arbitrary and

---

[3] The defendants assert that Streeter has improperly sued Laureate because it is only a parent company. The court does not reach the merits of that question because Streeter's claims will be dismissed.

capricious," they should be "mindful of their lack of competence in assessing academic judgments." *Onawola v. Johns Hopkins University*, 412 F. Supp. 2d 529, 532 (D. Md. 2006).

Upon his matriculation there is no doubt some contract was formed between Streeter and the defendants or that among the university's "official statements, policies and publications" there is a fourteen day response policy.[4] But Streeter never identifies the particular circumstances surrounding the defendants' delayed response; the complaint fails even to mention which fourteen day response period or periods Streeter believes the defendants violated.

At its core, Streeter's complaint turns not on the defendants' failure to respond within fourteen days to an inquiry or to his proposal but on Dr. deSouza's rejection of his dissertation proposal about two years after Streeter first presented the idea in his initial prospectus. But this decision is exactly the kind of academic decision courts are ill-equipped to second guess. *See Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment."); *see also Huang v. Bd. Of Governors of the Univ. of N.C.*, 902 F.2d 1134, 1142 (4th Cir. 1990). Streeter asks the court to sit in judgment on the sufficiency of his dissertation proposal in Business Administration, but the court lacks the expertise and the manageable standards by which to conclude Dr. deSouza was wrong to reject Streeter's doctoral proposal.

To the extent Streeter argues Dr. deSouza's decision violated the fourteen day policy, his complaint is still insufficient. Streeter does not allege that Dr. deSouza failed to respond to his proposal or an inquiry within fourteen days of assuming the role of committee chair. But even if

---

[4] The defendants argue that they did not owe a contractual duty to respond within fourteen days because their student handbook disclaims the existence of contracts with matriculated students. (Defs.' Reply, ECF No. 22). Because the court will dismiss Streeter's complaint even if there were a contract, it does not reach this issue.

4

he had, university policy only states "[f]eedback *should* take no longer than [fourteen] calendar days," (ECF No. 21, Ex. 3) (emphasis added), an aspirational, rather than a guaranteed, response time.[5] Moreover, none of the documents attached to the plaintiff's opposition to the motion to dismiss impose procedural guidelines for if and when a replacement supervisory committee chair may reject a PhD candidate's dissertation proposal. In fact, the university expressly warns students that prospectus approval "should not be construed as approval of the proposed project as is" and it should be "expected that major refinement of the plan will be necessary." (ECF No. 21, Ex. 6). Dr. deSouza's alterations, therefore, should not have surprised Streeter.

Finally, Streeter claims the defendants breached their contract by dismissing faculty members on his supervisory committee. Even if Walden and Laureate had a contractual obligation to retain faculty members, not one of the changes in Streeter's doctoral supervisory committee resulted from a faculty dismissal. Indeed, the change in the chair of his committee was not instigated by the defendants at all but requested by Streeter. (Compl. ¶ 61).

Because the court is not prepared to make academic judgments, and because Streeter does not provide factual allegations to support his legal assertions, his breach of contract claim will be dismissed.

II. Unjust Enrichment

Next, Streeter argues Walden and Laureate were unjustly enriched because they failed to provide feedback on his doctoral study prospectus within the fourteen day period stated in Walden's Doctoral Study Process Checklist and dismissed faculty members working on his doctoral supervisory committee.

---

[5] The court may consider a document "attached to a motion to dismiss . . . when the document is integral to and explicitly relied on in the complaint." *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) (internal quotations omitted).

Under Maryland law, a successful unjust enrichment claim must establish that: "(1) the plaintiff confer[red] a benefit upon the defendant; (2) the defendant kn[ew] or appreciate[d] the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." *Benson v. State*, 887 A.2d 525, 546 (Md. 2005). When considering academic judgments, "courts will not generally interfere in the operations of colleges and universities." *Onawola*, 412 F. Supp. 2d at 532 (citing *Harwood*, 747 A.2d at 209).

The complaint does not show that Streeter did not receive value in return for his tuition payments. Further, for all the reasons stated in section I, Streeter's complaint does not support the assertion that Walden and Laureate violated the fourteen day response policy or that it dismissed faculty members working on his supervisory committee. This claim also will be dismissed.

### III. Maryland Consumer Protection Act

Streeter also claims Walden and Laureate violated § 13-303(3) of the Maryland Consumer Protection Act, which protects consumers from unfair and deceptive trade practices in "[t]he offer for sale of course credit or other educational services," MD. CODE COM. LAW § 13-303(3), when a university makes "false . . . or misleading oral or written statement[s]," or fails "to state a material fact if the failure deceives or tends to deceive," MD. CODE COM. LAW § 13-301(1), (3). The plaintiff must show he relied on the false or misleading representation, and his reliance resulted in injury. *See Stewart v. Bierman*, 859 F. Supp. 2d 754, 768-69 (D. Md. 2012). And, Streeter must state with "some precision" the allegedly unlawful misrepresentations and "active concealments" responsible for his injury. *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007).

Streeter argues that Walden and Laureate violated the MCPA by making false and misleading statements about the length and cost of his program and knowingly failing to inform consumers of widespread delays in its doctoral programs. Not one of these allegations, however, is supported by factual claims in Streeter's complaint. Lacking even a general description of the circumstances constituting fraud, the complaint does not include allegations about who made the allegedly fraudulent statement, what the statement represented, or even whether a statement was ever made. Nor does it support the necessary allegation that Walden or Laureate knew or intentionally misrepresented a fact. A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

The complaint similarly lacks factual allegations to support a claim that Walden and Laureate intentionally or knowingly concealed material facts. *See Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 333, 364-65 (Md. 2012) (affirming dismissal of a case in which the plaintiff failed to allege that the defendants "had any intention that [the plaintiff] would rely on any knowing concealment, suppression, or omission of material facts." (internal quotations omitted)). Accordingly, the court will dismiss Streeter's claim under the MCPA.

IV.     Due Process Clause of the Fourteenth Amendment

Streeter claims the defendants violated his due process rights under the Fourteenth Amendment by abridging its doctoral study guidelines and engaging in unfair practices. The Due Process Clause of the Fourteenth Amendment prevents states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend., XIV, § 1. By its terms, the Fourteenth Amendment only applies to state action. *See U.S. v. Morrison*, 529 U.S. 598, 621 (2000).

Streeter does not claim the defendants are state actors, nor could he, because they are private institutions. Therefore, he cannot establish a claim under the Fourteenth Amendment and his claim will be dismissed.

V. Libel Claim

Streeter also claims Walden and Laureate sent him libelous messages concerning the sufficiency of his doctoral proposal during the dispute over his dissertation proposal in violation of a Florida criminal statute, Fla. Stat. § 836.01 *et seq.* Putting aside the question of Florida law's applicability in this case, to say nothing of Streeter's standing to bring suit under a criminal statute, Streeter's libel claim fails because the messages were not published.

In Florida, defamation has five elements: "(1) publication; (2) falsity; (3) . . . knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligen[ce] on a matter concerning a private person; (4) actual damages; and (5) [the] statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). A matter is published if it is communicated "intentionally or by a negligent act to one other than the person defamed." *Doe v. America Online, Inc.*, 783 So. 2d 1010, 1016 (Fla. 2001) (quoting the Restatement (Second) of Tort § 577 (Am. Law Inst. 1977)).

Streeter never alleges in his complaint that the communications he received, defamatory or not, were published. But even if he had, he also fails to allege that the defendants negligently disregarded the falsity of their statements. Indeed, Dr. Campbell, the person who sent Streeter the allegedly defamatory messages, based his statements concerning Streeter's academic performance on a careful investigation of Streeter's complaints. (ECF No. 22, Ex. 1). Accordingly, Streeter cannot succeed on his libel claim and this claim, too, will be dismissed.

VI.     False Claims Act

Last, Streeter claims Walden and Laureate violated the False Claims Act, 31 U.S.C. § 3729. The False Claims Act makes it unlawful to, among other things, "knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment or approval" to the United States government. 31 U.S.C. § 3729(a)(1)(A). Congress created a private right to sue under the Act if the suit is "brought in the name of the Government . . . the complaint and written disclosure of substantially all material evidence and information the person possesses [is] . . . served on the Government . . . [and] [t]he complaint . . . [is] filed in camera . . . remain[s] under seal for at least 60 days, and [is] not . . . served on the defendant until the court so orders." 31 U.S.C. § 3730(b)(1)-(2).

Streeter did not follow these procedures. Accordingly, his False Claims Act claim will be dismissed.

**Conclusion**

For the reasons stated above, the defendants' motion to dismiss will be granted. And even considering the additional information provided in his opposition, there is no indication Streeter would be able to amend his complaint sufficiently to state a plausible claim. Accordingly, the dismissal will be with prejudice and without leave to amend. A separate order follows.

____ December 5, 2017_____          _____/s/_____ _____
            Date                                      Catherine C. Blake
                                                   United States District Judge